**Joseph G. PODEWILS and Gerald Nell Inc., Petitioners,**

v.

**NATIONAL LABOR RELATIONS BOARD, Respondent.**

**International Brotherhood of Electrical Workers, Local 494, Intervenor.**

**No. 00–1505.**

United States Court of Appeals, District of Columbia Circuit.

Argued Nov. 13, 2001.

Decided Dec. 28, 2001.

Kevin J. Kinney argued the cause for petitioners. With him on the briefs was Gene M. Linkmeyer.

Steven B. Goldstein, Attorney, National Labor Relations Board, argued the cause for respondent. With him on the brief were Arthur F. Rosenfeld, General Counsel, John H. Ferguson, Associate General Counsel, Aileen A. Armstrong, Deputy Associate General Counsel, and Julie B. Broido, Supervisory Attorney.

Matthew R. Robbins argued the cause for intervenor. With him on the brief was Jonathan M. Conti.

Before: EDWARDS and TATEL, Circuit Judges, and SILBERMAN, Senior Circuit Judge.

Opinion for the Court filed by Senior Circuit Judge SILBERMAN.

SILBERMAN, Senior Circuit Judge:

Joseph G. Podewils and Gerald Nell Inc. petitioned for review of the National Labor Relations Board's determination that Local 494 of the International Brotherhood of Electrical Workers (the Local) did not violate section 8(b)(1)(B) of the National Labor Relations Act[1] by fining its member Podewils $100,000 after he went to work as a supervisor at Gerald Nell. The Board's decision turns on its finding of fact that the Local was not seeking a collective bargaining relationship with the company when it processed an internal charge against Podewils. That finding is not supported by substantial evidence and therefore we grant the petition for review.

## I.

This case involves the limits on a union's ability to discipline a member who is also performing labor relations supervisory functions. Podewils was a rank-and-file member of the Local from 1976 to 1997, when he went to work as a manager—running the electrical division—for Gerald Nell Inc. (a nonunion shop). Before beginning work at Gerald Nell, Podewils went to the Local's office twice in October 1997 and filled out an honorary withdrawal card, informing Leon Burzynski, a business representative for the Local, that he was withdrawing for personal reasons. From October to December 1997, Burzynski, acting on an anonymous tip that Podewils was working at Gerald Nell, sought him out. On December 1, 1997, Burzynski went to the company's offices to find Podewils; he claimed his intention was to verify that Podewils was working there. But the ALJ refused to credit Burzynski, since he could easily have verified Podewils' employment by a phone call. Burzynski, instead of pursuing the issue whether Podewils could legitimately withdraw from the Union, asked: "Is there any possibility you being here means that the electricians here might become union." Podewils responded "that wouldn't happen here ... that wouldn't be an option." Burzynski gave Podewils his business card with his home phone number written on the back, which the ALJ found was for the purpose of giving Podewils an opportunity to change his mind. The business representative then went back to his car and immediately drew up an internal charge against Podewils for violating several provisions of the I.B.E.W. Constitution—one violation was for working for a nonunion employer while still a member of the Union. Podewils did not call Burzynski and the latter filed charges with the Local two weeks later.

Two months after that, the Local informed Podewils by letter that he had been charged with violating the I.B.E.W. Constitution. After a hearing, to which Podewils was invited but did not attend, the Local informed him that he had been found guilty and assessed a fine of $100,000. Burzynski testified that the penalty was proper because Podewils had already been responsible for over $250,000 of work that should have been "done union." Podewils sought counsel after receiving notice of the fine and appealed to the International, which reduced the fine to $10,000, based on Podewils' salary and the period of time he had worked for Gerald Nell as opposed to the amount of union work allegedly lost.

Petitioners then filed unfair labor practice charges against the Local and the International alleging a violation of section 8(b)(1)(A), which makes it unlawful for a labor organization or its agents "to restrain or coerce ... employees in the exercise of the rights guaranteed in section 157 of this title[,]" for disciplining Podewils after he resigned from the Union and also

---

1. 29 U.S.C. § 153 *et seq.* (2001).

a violation of 8(b)(1)(B), which makes it unlawful "to restrain or coerce ... an employer in the selection of his representatives for the purpose of collective bargaining or the adjustment of grievances...." 29 U.S.C. §§ 158(b)(1)(A), (b)(1)(B).

The ALJ rejected petitioners' contention that Podewils had effectively resigned from the Union, so he concluded the Local did not violate section 8(b)(1)(A) of the Act. He found that there was no credible evidence to support Podewils' contention that he mailed the Local a resignation letter it did not receive. Turning to the section 8(b)(1)(B) allegation, and applying the three-part test set out in *NLRB v. Electric Workers IBEW Local 340 (Royal Electric)*, 481 U.S. 573, 585–89, 107 S.Ct. 2002, 2010–12, 95 L.Ed.2d 557 (1987), the ALJ made the following three findings: Podewils was a section 8(b)(1)(B) "grievance adjuster"; the Local was seeking to unionize Gerald Nell's employees; and the $100,000 fine was intended to adversely affect Podewils in the performance of his section 8(b)(1)(B) duties. The ALJ recommended dismissal of all allegations against the International.

The general counsel, petitioners and the Local all filed exceptions. The Board adopted the ALJ's recommended dismissal of the 8(b)(1)(A) allegation as well as the dismissal of the charges against the International. But the Board reversed the ALJ's finding that the Local was seeking a contractual relationship with Gerald Nell. The Board purportedly found no basis for disputing the ALJ's credibility findings but thought the *only* evidence supporting the general counsel's contention that the Local was seeking a collective bargaining rela-

tionship with Gerald Nell was Burzynski's inquiry. And that remark "standing alone, falls short of the kind of concrete evidence necessary to show a union is currently and actually seeking ... a collective bargaining-relationship." Member Hurtgen dissented. Petitioners contest only the Board's determination that the Local did not violate 8(b)(1)(B).

## II.

The law governing this case is undisputed. A union violates 8(b)(1)(B) by disciplining a supervisor who has either collective bargaining or grievance adjusting duties, thereby coercing an employer, only if it has, or is seeking, a collective bargaining relationship with the employer. See *Royal Electric*, 481 U.S. at 590, 107 S.Ct. at 2012–13.[2] The Board has not adopted the interpretation of section 8(b)(1)(B) Justice Scalia advanced in his *Royal Electric* concurrence: that the section only applies "to circumstances in which there is an actual contract between the union and affected employer, without regard to whether the union has an intent to establish such a contract." *Id.* at 597, 107 S.Ct. at 2016 (Scalia, J., concurring). The Board has said that in the absence of an existing collective bargaining relationship "the evidence must show that the union engaged in specific overt acts such as picketing or hand-billing for recognition, soliciting authorization cards, *or making statements to an employer indicating a concrete interest* in representing the employer's employees, as opposed to a long-term objective of organizing employees generally." *Plumbers Local 597*, 308

---

**2.** The Supreme Court's opinion carefully limiting 8(b)(1)(B) to the case of a union that has or is seeking a collective bargaining relationship with an employer is in part based on the premise that a union member—particularly a supervisor—has "a right to resign from a union *at any time* and avoid imposition of union

discipline." *Royal Electric*, 481 U.S. at 595, 107 S.Ct. at 2015 (emphasis added). This case suggests it may not always be that easy. The ALJ found that each Local office worker testified that he or she was under no obligation to explain to Podewils he should resign, not withdraw.

N.L.R.B. 733, 733–34, 1992 WL 226359 (1992) (emphasis added). The Board did not purport to alter this articulation of the applicable legal standard. Instead, the Board, reversing the ALJ, found that the Local was not in fact actually seeking a collective bargaining relationship with Gerald Nell—Burzynski's statement was not sufficiently "concrete"—and petitioners claim its finding lacks substantial evidence on the whole record.

So much would appear straightforward. But counsel for the Board and for the intervening Local have sought to divert our attention. The Board argues extensively in its brief that its finding that Podewils did not resign from the Union is entitled to deference, despite the fact that petitioners explicitly do not challenge that finding and the resulting determination that the Local did *not* violate 8(b)(1)(A). At oral argument the Board's counsel also suggested that the discipline meted out to Podewils was not really designed to impact the employer's selection of a grievance adjuster (although just how Podewils could manage the electrical division without the ability to adjust grievances seems obscure). Yet the Board did not even suggest that ground in its decision.

The intervenor, for its part, argued that Podewils should not really be considered a grievance adjuster presumably because that term should be limited to grievances that arise out of a collective bargaining relationship. *See Royal Electric*, 481 U.S. at 588 n. 12, 107 S.Ct. at 2012 n. 12. Intervenor's difficulty is that the Board did not rest its decision on this reasoning; the Board assumed that Podewils qualified as a grievance adjuster.

■ We agree with petitioners. The inferences the Board draws from the evidence are quite unreasonable and therefore under *Allentown Mack Sales & Serv. v. NLRB*, 522 U.S. 359, 378, 118 S.Ct. 818, 828–29, 139 L.Ed.2d 797 (1998), the

Board's finding must be rejected. *See also Warshawsky & Co. v. NLRB*, 182 F.3d 948, 953 (D.C.Cir.1999). First there is an internal contradiction in the Board's decision. It purported not to disturb the ALJ's credibility findings. Yet it rejected the ALJ's conclusion, *based on his refusal to credit Burzynski*, that the business agent personally went to Gerald Nell to confront Podewils (rather than simply call to verify his employment) for the very purpose of seeking union recognition. The Board merely stated that it refused to draw an "inference" that the Local had an "improper retaliatory purpose" because of the personal visit. The question, however, is whether that personal visit was itself evidence of the Local's attempt to gain recognition and the Board advanced no reasons to reject the ALJ's finding, buttressed by his credibility determination, that it was.

Moreover, the Board also refused to draw any inference from the fact that Burzynski left his business card and telephone number with Podewils, rejecting the ALJ's finding that Burzynski's purpose was to give Podewils a chance to change his mind concerning establishing a collective bargaining relationship with the Local. This also seems to be a rather off-hand rejection of the ALJ's credibility determination, but, in any event, the Board's explanation is ridiculous: that leaving his card with Podewils was consistent with "Burzynski's responsibility as a business representative to communicate with constituent members such as Podewils." One does not have the impression that Burzynski wished to communicate with Podewils as his business representative.

Burzynski admitted, moreover, that if Podewils had called with a change of mind Burzynski would not have filed charges. The ALJ took that as further evidence linking the Local's purpose to gain a col-

lective bargaining relationship with the retaliatory fine against Podewils. The Board reasoned, however, that if Gerald Nell had recognized the Local the charges would have been mooted since Podewils would no longer be working for a non-union company. As petitioners suggest, that reasoning includes a logical flaw; Podewils would still have violated the I.B.E.W. Constitution, according to the Local, by his past behavior, so Burzynski's posture can only support a recognition motive.

Finally, the Board ignores a damaging piece of evidence—the elephant in the room so to speak—that along with Burzynski's visit and comments to Podewils conclusively establishes that the Local sought a collective bargaining relationship with Gerald Nell and retaliated against Podewils for not providing it. That evidence is the size and basis for the fine. Counsel for the Board argues that the reasonableness of an internal union fine is not a matter which we can consider. That is so, but we certainly can look at the size and purpose of the initial fine, as did the ALJ, for the purpose of determining the Local's motivation. And the subsequent modification of the fine by the International, both as to the amount and basis, is not really relevant to the Local's intent. If anything, it is damning since it reflects the International's realization that the Local was in an untenable legal position.

Not only did the Local levy on Podewils the staggering fine of $100,000, it made clear that the fine was based not on Podewils' salary, but on the supposed amount of money the Local had lost because Gerald Nell was unorganized. We think it is quite astonishing that the Board ignores this evidence.

To be sure, as the Board noted, the Local never engaged in solicitation of authorization cards, picketing or hand-billing, nor did it demand recognition. But unions often gain recognition—particularly in certain crafts—from the top down, by simply requesting recognition from a sympathetic manager or asking a sympathetic manager to help with organizing, which is exactly what the ALJ determined was the Local's purpose. That Burzynski did not make a demand for recognition or engage in public organizational efforts probably reflected a lack of employee support. It is flatly unreasonable, however, to conclude, as the Board does, that his solicitation was somehow not "concrete evidence" that the Local was *seeking* a collective bargaining relationship with Gerald Nell—particularly when combined with the balance of the evidence. The statement itself was not coercive but that hardly detracts from its probative value as an indication of the Local's objective.

In light of the whole record, the Board's treatment of Burzynski's inquiry as not "concrete" enough to establish that the Local was "actually" seeking a collective bargaining relationship at Gerald Nell is equivalent to an attempted robbery case where it is argued that a panhandler's "request" for a contribution is not concrete enough to establish his objective despite the fact that when he is refused he hits the victim in the head with a club.

\* \* \* \*

Accordingly, the petition for review is granted, and the case is hereby remanded to the Board for further proceedings not inconsistent with this opinion.

*So ordered.*